IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADIDAS AMERICA INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-03248-N |
| | § | |
| SHOEBACCA LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

This Order addresses Defendants Shoebacca Ltd.'s ("Shoebacca"), Marc G. Schlachter's, Robert M. Schlachter's, and Ryan E. Schlachter's motion to dismiss [9]. For the following reasons, the Court grants in part and denies in part the motion to dismiss. Additionally, the Court grants Plaintiff adidas America, Inc. ("adidas") leave to amend its complaint.

### I. ORIGINS OF THE CONTRACTUAL DISPUTE

This action is the second of two pending lawsuits before this Court related to a contract (the "Agreement") for the sale of sports merchandise between adidas and Nafta Traders, Inc. ("Nafta"), a retailer that is not a party to this case.[1] Adidas, a creator and seller of sports merchandise, contracted to sell damaged and used goods to Nafta at a discount. Under the Agreement, Nafta would then sell those goods under certain contractual restrictions on how and where the goods would be sold. Importantly, the

---

[1] The first of the two cases is *Nafta Traders, Inc. v. Adidas America, Inc.*, No. 3:19-CV-00915-N (N.D. Tex. filed Apr. 15, 2019).

ORDER – PAGE 1

contract contained a prohibition on the transfer of the goods to any Nafta "Affiliate," defined in the contract as any company that "is controlled by or is under common control with" Nafta. Compl. ¶ 16 [1]. In April 2019, Nafta filed the first action alleging adidas breached the Agreement by failing to deliver merchandise and violating various contractual provisions. Adidas filed counterclaims including a breach of contract claim alleging Nafta breached the Agreement by transferring discounted merchandise to Nafta's Affiliate, Shoebacca, in violation of the contract's distribution restrictions.

On October 26, 2020, adidas filed this action against Shoebacca and three individual defendants who, according to adidas, collectively have ownership interests and positions of control in *both* Nafta and Shoebacca. Compl. ¶¶ 5–6, 8. Specifically, adidas alleges Marc Schlachter and Robert Schlachter own and control the corporation that is the general partner of Shoebacca, and that Ryan Schlachter serves as Shoebacca's president. *Id.* ¶ 6. Adidas further alleges, more vaguely, that the three Schlachters own and run Nafta. *Id.* ¶ 8. None of the defendants are parties to the first lawsuit, but each has some relation to Nafta, the plaintiff in that case. Adidas alleges Shoebacca and the Schlachters tortiously interfered with the Agreement by inducing Nafta to transfer merchandise to Shoebacca in violation of the contract's terms. Adidas seeks damages for tortious interference with contract, civil conspiracy, and unjust enrichment, and seeks a declaratory judgment that the Defendants "wrongfully obtained merchandise from adidas by intentionally interfering with adidas's existing contract with Nafta and have unjustly enriched themselves by engaging in a pattern of deceit by using Nafta as a straw purchaser." Compl. 7–8. Defendants filed this motion to dismiss.

ORDER – PAGE 2

## II. RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

## III. THE COURT GRANTS IN PART AND DENIES IN PART DEFENDANTS' MOTION TO DISMISS ADIDAS'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIMS

### A. Legal Standard for Tortious Interference with Contract

Under Texas law, a party claiming tortious interference with contract must show "(1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29

S.W.3d 74, 77 (Tex. 2000). Tortious interference with contract requires a breach of contract. *El Paso Healthcare Sys. Ltd. v. Murphy*, 518 S.W.3d 412, 421–22 (Tex. 2017).

### 1. There is No Tortious Interference Where There is a Complete Identity of Interests Between the Breaching and Interfering Parties. –

A foundational principle of tortious interference with contract case law is "the logically necessary rule that a party cannot tortiously interfere with its own contract." *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995). Accordingly, the Texas Supreme Court has held that "there can be no tortious interference when there is a complete identity of interests between a party to a contract and the defendant who is accused of interfering with the contract." *ProTradeNet, LLC v. Predictive Profiles, Inc.*, 369 F. Supp. 3d 788, 791 (W.D. Tex. 2019) (citing *Holloway*, 898 S.W.2d at 795, 797). Most Texas courts addressing the issue have held it is impossible for a parent corporation to interfere with the contract of its wholly owned subsidiary. *Id.* at 791–94 (noting only one Texas appellate court has reached the opposite conclusion).

### 2. A Corporate Agent Can Interfere with a Principal Corporation's Contract Under Limited Circumstances. –

To establish a tortious interference claim against a corporate agent for interfering with a principal corporation's contract, a plaintiff must show as part of its prima facie case that the agent "acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017) (quoting *Holloway*, 898 S.W.2d at 796); *see Alviar v. Lillard*, 854 F.3d 286, 289–90 (5th Cir. 2017). This burden on the plaintiff is considered a part of its burden to prove a

ORDER – PAGE 4

willful or intentional act of interference. *Hansen*, 525 S.W.3d at 690–91. The personal motivation must be something beyond a financial benefit derived from the breach of contract by the contracting corporation. *See Holloway*, 898 S.W.2d at 796 (The "mere existence of a personal stake in the outcome, especially when any personal benefit is derivative of the improved financial condition of the corporation . . . cannot alone" suffice.). In other words, a corporation's agent is not liable in tort for inducing a breach of contract solely because the resulting financial benefit to the breaching corporation benefited the agent.

Additionally, a plaintiff bringing a claim for tortious interference with contract against a corporate agent must allege that the corporation complained of the agent's conduct to effectively state a claim. *Alviar*, 854 F.3d at 291 (upholding a Rule 12(b)(6) dismissal because the "clear language of the Texas Supreme Court" establishes that "a plaintiff claiming tortious interference by an agent must allege that the corporate principal 'complained' of the agent's action") (citing *Morgan Stanley & Co., Inc. v. Texas Oil Co.*, 958 S.W.2d 178, 181–82 (Tex. 1997) ("While a principal's complaint is not conclusive of whether its agent acted in its best interest, absent any complaint an agent cannot be said to have acted contrary to its principal's best interests.")).

### B. Adidas Has Failed to State a Claim for Tortious Interference With Contract Against the Individual Defendants

Adidas's tortious interference with contract claims against Marc Schlachter, Robert Schlachter, and Ryan Schlachter rely on their ability to act on behalf of Nafta by using their positions within the company to cause Nafta's breach. Therefore, these claims properly

ORDER – PAGE 5

fall under the corporate agent analysis outlined above. Adidas does not allege in its complaint that Nafta complained of any of the individual defendants' actions. Because the Fifth Circuit has made clear that this is a pleading requirement in cases such as this one under Texas law, the allegations in the complaint are insufficient to state a claim for tortious interference with contract as to the individual defendants. Therefore, the Court grants Defendants' motion to dismiss the tortious interference with contract claims against Marc Schlachter, Robert Schlachter, and Ryan Schlachter.

### C. Adidas Has Successfully Stated a Claim for Tortious Interference with Contract Against Shoebacca

The complaint successfully alleges that Shoebacca, through its agents, induced Nafta to breach its contract with adidas and that the breach proximately caused harm to adidas by securing a discount benefit for Shoebacca that it could not otherwise obtain. Therefore, adidas has successfully stated a claim against Shoebacca unless Shoebacca's Affiliate relationship with Nafta precludes the claim as a matter of law.

Defendants argue adidas's claim fails because adidas must show Nafta and Shoebacca are Affiliates to establish a breach of contract, but that relationship renders Shoebacca incapable of interference. The Court is unwilling to hold at this stage that the complaint alleges that Nafta and Shoebacca have the "complete identity of interests" necessary to bar adidas's tortious interference with contract claim against Shoebacca. Notably, there is no indication in the complaint that the entities share a parent-subsidiary relationship or that their ownership groups are identical. Defendants point out that the case law on this subject does not expressly limit the bar on tortious interference claims to the

ORDER – PAGE 6

wholly-owned subsidiary relationship, but that does not require the dismissal of the claim here. The issue is whether the complaint alleges that Nafta and Shoebacca have completely identical interests. Drawing factual inferences adidas's favor, as the Court must, it is possible that Shoebacca's actions financially benefited Shoebacca at the expense of Nafta shareholders who hold no financial interest in Shoebacca. *See Copeland v. Alamo Billing Co.*, 2021 WL 2792354, at *5 (E.D. Tex. May 3, 2021) (holding the interests of two entities were not necessarily identical where three individuals collectively owned 90% of one entity and 100% of the other). This is just one plausible set of facts under which Nafta and Shoebacca may not have a "complete identity of interests." Accordingly, the Court denies the motion to dismiss the tortious interference with contract claim against Shoebacca.

### IV. THE COURT GRANTS DEFENDANTS' MOTION TO DISMISS ADIDAS'S CIVIL CONSPIRACY CLAIMS

To succeed on a civil conspiracy claim, a plaintiff must show "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *Adams v. Alcolac, Inc.*, 974 F.3d 540, 544 (5th Cir. 2020) (quoting *First Utd. Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017)). Civil conspiracy is not an independent tort, and a plaintiff must show some tortious act committed by a co-conspirator pursuant to the conspiracy. *Id.*

Under Texas law, a corporation's agents generally cannot conspire with each other or with the corporation because their acts are attributed to the corporation. *Leasehold

*Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003).  There is an exception to this general rule where the individual co-conspirators act for personal purposes against the corporation's best interest.  *Aguilar v. State Farm Lloyds*, 2015 WL 5714654, at *3 (N.D. Tex. Sept. 28, 2015) ("A conspiracy between a corporation and its agent can exist only where the agent is acting outside the scope of his employment for his own personal benefit.") (citing *Crouch v. Trinque*, 262 S.W.3d 417, 427 (Tex. App. – Eastland 2008, no pet.); *Fojtik v. First Nat'l Bank of Beeville*, 752 S.W.2d 669 (Tex. App. – Corpus Christi 1988), *writ denied*, 775 S.W.2d 632 (Tex. 1989) (per curiam)).

Defendants argue that adidas has failed to state a civil conspiracy claim because the underlying tortious interference with contract claims fail.  The only surviving tort claim that could serve as the underlying tortious act by a co-conspirator in this case is the tortious interference with contract claim against Shoebacca.  Therefore, Shoebacca must be a co-conspirator for a valid civil conspiracy claim to exist.  But adidas has pleaded no facts suggesting the individual defendants acted outside the scope of their employment or against Shoebacca's best interest.  The complaint alleges just the opposite by repeatedly stating the Schlachters and Shoebacca acted in concert to induce Nafta's breach and collect outsized profits via Shoebacca's sales.  *See, e.g.*, Compl. ¶ 27 (The "Schlachters took these actions in both their personal capacities to enrich themselves through their ownership interest in Shoebacca, and in their representative capacities as officers of Shoebacca.").  Because Shoebacca is incapable of conspiring with its own agents under the set of facts alleged in the complaint, the Court dismisses adidas's claims for civil conspiracy.

## V.  THE COURT GRANTS DEFENDANTS' MOTION TO DISMISS ADIDAS'S UNJUST ENRICHMENT CLAIMS

Adidas also seeks damages for unjust enrichment based on Defendants' use of Nafta to obtain adidas merchandise cheaply and sell it for outsized profits.  However, the unjust enrichment claims must be dismissed because a valid contract governs the subject matter of adidas's claims.  There can be no recovery for unjust enrichment "when a valid, express contract covers the subject matter of the parties' dispute."  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).  Adidas's unjust enrichment claims impermissibly seek quasi-contract damages resulting directly from the breach of the contractual prohibition on Nafta's transfer of merchandise to its Affiliates.  Adidas attempts to avoid this result by characterizing the "subject matter" of the dispute as Shoebacca's unauthorized sale of the merchandise.  But adidas's claims in this case arise from how Shoebacca obtained the merchandise sold under the Agreement, not the sales themselves.

Adidas argues the express-contract bar does not apply because Defendants are not parties to the contract, citing language of a Texas appellate court decision describing unjust enrichment as applying to "disputes which for one reason or another are not governed by a contract between the contending parties."  Pl.'s Response 16 [15] (quoting *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. – Texarkana 1996), *aff'd* 966 S.W.2d 467 (Tex. 1998)).  However, courts have applied this bar to quasi-contract recovery even in cases where the contract was not between parties to the lawsuit because a contract sufficiently governed the subject matter of the claims.  *ACS Primary Care Physicians S.w., P.A. v. UnitedHealthcare Ins. Co.*, 514 F. Supp. 3d 927 (S.D. Tex. 2021)

ORDER – PAGE 9

(barring quantum meruit recovery where contract between the defendants and their non-party insureds bore directly on the claims); *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 724 (Tex. App. – Houston 2011, no pet.) ("The express contract bar applies not only when the plaintiff seeks to recover in quantum meruit from the party with whom he expressly contracted, but also when the plaintiff seeks recovery from a third party foreign to the original contract but who benefitted from its performance."); *Pension Advisory Grp., Inc. v. Fidelity Sec. Life Ins. Co.*, 2020 WL 1181256, at *9 (Tex. App. – Corpus Christi Mar. 12, 2020, no pet.).

Adidas argues the Court should not grant the motion to dismiss on this ground because the express-contract bar is an affirmative defense. However, even if adidas is correct that the bar is properly characterized as an affirmative defense, the unjust enrichment claims still fail under Rule 12(b)(6) because the defense is apparent from the face of the complaint. *In re 3 Star Properties, L.L.C.*, 6 F.4th 595, 604 (5th Cir. 2021). Because Adidas cannot recover on a quasi-contract theory where the cause of action is directly derived from an alleged breach of a valid contract, the Court grants Defendants' motion to dismiss as to adidas's unjust enrichment claims.

## VI. Adidas Withdraws its Declaratory Judgment Claim

Adidas has voluntarily withdrawn its separate claim for a declaratory judgment because it is duplicative of the claim for tortious interference with contract. Pls.' Resp. 15. Therefore, the Court need not address the parties' arguments regarding whether such a claim is duplicative of the substantive claims discussed above.

## VII.  THE COURT DENIES DEFENDANTS' MOTION
## TO DISMISS FOR IMPROPER CLAIM SPLITTING

Finally, Defendants ask the Court to dismiss this suit under the doctrine of claim-splitting.  To the extent Defendants' argument relies on the parties being the same in the two cases, this request is appropriately considered in the first lawsuit.  *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir. 1999) (Under Fifth Circuit precedent, the first-to-file rule "balancing act is reserved only for the first-filed court."). Because this Court is also the first-filed court, it will address the merits of this argument.

The first-to-file rule and related rule against claim-splitting are discretionary doctrines because they primarily rest on "principles of comity and sound judicial administration."  *Id.* at 603; *Ameritox, Ltd. v. Aegis Scis. Corp.*, 2009 WL 305874, at *4 n.4 (N.D. Tex. Feb. 9, 2009).  A primary purpose of the rule against claim-splitting is to prevent a single plaintiff from harassing a defendant by bringing related claims piecemeal in multiple lawsuits against the same defendant.  *In re Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996).

Adidas's claims here do not present issues of harassment by splitting claims across multiple lawsuits.  Adidas is the plaintiff here and the defendant in the first lawsuit. Without directly arguing so, Defendants essentially ask the Court to find the present claims were compulsory counterclaims in the original suit even though Defendants are not parties in that case.  However, Defendants have not established that the Federal Rules governing compulsory counterclaims required adidas to join Defendants into the first action to bring these claims.  Because this case does not present harassment issues and Defendants have

not established that any rule required adidas to bring these claims in the first lawsuit, the Court declines to dismiss adidas's claims on claim-splitting grounds.

### VIII. THE COURT GRANTS ADIDAS'S REQUEST FOR LEAVE TO AMEND THE COMPLAINT

In its response, adidas requests leave to amend its complaint to cure any deficiencies the Court identifies. Leave to amend should be freely given when justice so requires and should be granted absent some justification for refusal. *Foman v. Davis*, 371 U.S. 178, 182 (1962). When a plaintiff's complaint fails to state a claim, courts generally give the plaintiff the chance to amend the complaint before dismissing the claims. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). While one of adidas's claims does survive here, the nature of the dismissal of the other claims warrants a chance to cure the complaint's deficiencies. The Court grants adidas leave to amend its complaint, and adidas should file its amended complaint within thirty (30) days of this Order.

### CONCLUSION

Because adidas has adequately stated a claim for tortious interference with contract against Shoebacca, the Court denies the motion to dismiss as to that claim. The Court determines that adidas has failed to sufficiently plead its case as to the remaining claims, but grants leave to adidas to amend its pleading within thirty (30) days of this Order.

Signed September 27, 2021.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 12